**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN L. MALEVITIS, | ) | Case No. 13-26694 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| GARY POTTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. _____ |
| | ) | |
| JOHN L. MALEVITIS, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Plaintiff Gary Potts ("*Mr. Potts*"), by and through his undersigned counsel, hereby alleges for his *Complaint to Determine Dischargeability of Debt* (the "*Complaint*") against John L. Malevitis ("*Malevitis*" or the "*Debtor Defendant*") as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4. This is an adversary proceeding brought pursuant to section 523 of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") seeking a determination by the Court that the obligations of the Debtor Defendant to Mr. Potts are non-dischargeable.

CI-9390189 v6

## INTRODUCTION

5. Malevitis undertook a deliberate course of action detrimental to his former client, Mr. Potts, which was designed to allow Malevitis to keep a fee that he did not earn and which directly resulted in a judgment against Mr. Potts to recover that unearned fee. After Mr. Potts reported Malevitis' conduct to the Illinois Attorney Registration and Disciplinary Commission (the "*ARDC*"), the ARDC Hearing Board (the "*Hearing Board*") concluded that Malevitis "engaged in a deliberate and dishonest course of conduct" in connection with his representation of Mr. Potts, and Malevitis was subsequently suspended from practicing law. Mr. Potts sued Malevitis and J.L. Malevitis and Associates, Ltd. (the "*Malevitis Firm*") for certain damages arising in connection with Malevitis' former representation of Mr. Potts and currently holds an unsatisfied judgment against Malevitis and the Malevitis Firm in the amount of $16,820.83, plus costs. Through this action, Mr. Potts seeks a determination that his judgment against Malevitis is non-dischargeable.

## PARTIES

6. The Plaintiff, Mr. Potts, is an individual and citizen of the State of Illinois.

7. The Debtor Defendant, John L. Malevitis, is an individual and citizen of the State of Illinois and the Debtor in Case No. 13-26694.

## STATEMENT OF FACTS

8. Mr. Potts was injured when he was struck by an automobile on or about May 4, 2001 in Cook County, Illinois.

9. Mr. Potts retained attorney Robert Hauser ("*Mr. Hauser*") to prosecute a personal injury lawsuit on his behalf arising out of the aforementioned automobile accident.

10. Mr. Hauser filed a lawsuit, on behalf of Mr. Potts, in the Circuit Court of Lake County, Illinois, on or about June 27, 2001 (the "*Lake County Action*").

11. During his seventeen month representation of Mr. Potts, Mr. Hauser's work on the Lake County Action included investigation of the accident and photographing the scene, telephone conferences and confirming correspondence with independent eyewitnesses, filing the lawsuit, drafting pleadings and amended pleadings, legal research, depositions of the parties and the defendant's daughter, numerous conferences with the client and the adverse attorney, and participation in a pre-trial conference.

12. In or around November 2002, while Mr. Potts was working on Malevitis' automobile at Mr. Potts' place of employment, Mr. Potts and Malevitis discussed Mr. Potts' accident and the Lake County Action. At that time, Malevitis urged Mr. Potts to retain him so that Malevitis could represent Mr. Potts in the ongoing Lake County Action.

13. Following the exchange between Mr. Potts and Malevitis in or around November 2002, Malevitis visited Mr. Potts' home to again discuss Mr. Potts' accident and the Lake County Action.

14. At this meeting at Mr. Potts' home and prior to the time Malevitis was retained by Mr. Potts, Mr. Potts and his wife, Barbara Dalton ("*Ms. Dalton*"), expressed concern about having to pay Mr. Hauser for the work Mr. Hauser had already completed on the Lake County Action and paying Malevitis his contingency fee in the event that Mr. Potts retained Malevitis.

15. At this meeting at Mr. Potts' home and prior to the time Malevitis was retained by Mr. Potts, Malevitis told Mr. Potts not to worry about paying any fees or other amounts to Mr. Hauser.

16. At this meeting at Mr. Potts' home and prior to the time Malevitis was retained by Mr. Potts, Malevitis told Mr. Potts that Mr. Potts would only ever need to pay "one attorney, one fee, one time."

17. At this meeting at Mr. Potts' home and prior to the time Malevitis was retained by Mr. Potts, Malevitis told Mr. Potts that if Mr. Hauser was entitled to any fees or other amounts based on his representation of Mr. Potts in the Lake County Action, those fees and expenses would be paid out of the fees and expenses Malevitis received, if any, for representing Mr. Potts.

18. Mr. Potts relied on these representations concerning the division of attorney fees in the Lake County Action.

19. At the conclusion of the meeting at Mr. Potts' home, Mr. Potts decided to retain Malevitis and subsequently terminated his attorney-client relationship with Mr. Hauser.

20. Subsequent to Mr. Potts' retention of Malevitis, the Lake County Action was dismissed, without prejudice, and Malevitis filed a new lawsuit, on behalf of Mr. Potts, in the Circuit Court of Cook County, Illinois (the "*Cook County Action*").

21. The Cook County Action was eventually resolved, following a binding arbitration with the defendant and/or the defendant's insurer, Allstate Insurance Co. ("*Allstate*"), having to pay Mr. Potts $73,717.78.

22. Malevitis received a fee in an amount of $29,486.80 from the arbitration award.

23. Following the award, Mr. Potts received a release and a settlement statement to sign. The settlement statement listed Mr. Hauser's costs in an amount of $882.50 as "Prior attorney's expenses on file," which were to be deducted from Mr. Potts' portion of the proceeds.

24. In or around December 2005, Malevitis received a check issued by Allstate made payable to Malevitis, Mr. Potts, and Mr. Hauser.

25. Upon receiving the check from Allstate, Malevitis did not send Mr. Potts or Mr. Hauser a check for $882.50 for Mr. Hauser's expenses.

4

26. Malevitis did not contact Mr. Hauser to let him know the Lake County Action had been resolved or to resolve Mr. Hauser's lien.

27. Thereafter, Malevitis prepared and filed a "Motion to Reduce Lien," which requested that Mr. Hauser's lien be reduced to "zero." In support of the Motion to Reduce Lien, Malevitis represented that Mr. Hauser's representation of Mr. Potts had been "brief."

28. On December 15, 2005, a hearing was held on Malevitis' Motion to Reduce Lien. Although the certificate of service signed by Malevitis stated that the motion was mailed to Mr. Hauser at his former firm on December 7, 2005, no one else stepped up when the case was called. An order was entered granting the motion and extinguishing Mr. Hauser's lien.

29. Malevitis sent a copy of the order granting the Motion to Reduce Lien to Allstate, and Allstate issued a second check payable to Malevitis and Mr. Potts.

30. On March 1, 2007, Mr. Hauser wrote to Malevitis to inquire into the Cook County Action.

31. On or around November 2, 2007, Mr. Hauser filed a lawsuit against Mr. Potts in the Circuit Court of Lake County, Illinois, seeking a fee award of 40% of the total award from the Cook County Action (the "*Hauser Action*").

32. After being served with Mr. Hauser's complaint in the Hauser Action, Ms. Dalton contacted Malevitis. Malevitis told Ms. Dalton that he was willing to represent Mr. Potts in the Hauser Action but that Malevitis would require a $5,000 retainer prior to completing any work. Malevitis explained that his representation of Mr. Potts had already concluded and that defending the Hauser Action would constitute a new client matter. Mr. Potts declined the offer.

33. Subsequently, Mr. Potts made a request to both Mr. Hauser and Malevitis that they attempt to resolve with each other Mr. Hauser's claim for fees, but both attorneys refused to do so.

34. On or around January 7, 2008, Mr. Potts filed a third party complaint against Malevitis in the Hauser Action, alleging, among other things, breach of contract and breach of fiduciary duties. On or around September 15, 2008, Mr. Potts amended the third party complaint to add a claim for implied indemnification.

35. The claims in the Hauser Action were submitted to binding arbitration. On or around December 11, 2008, an arbitration panel in the Hauser Action issued an award in favor of Mr. Hauser and against Mr. Potts in the amount of $16,820.83, plus costs and issued an award in favor of Mr. Potts and against Malevitis and the Malevitis Firm in the amount of $16,820.83, plus costs.

36. On January 15, 2009, Mr. Potts obtained a judgment from the Circuit Court of Lake County, Illinois, on the aforementioned arbitration award against Malevitis and the Malevitis Firm in the amount of $16,820.83, plus costs (the "*Judgment*"). A true and correct copy of the Judgment is attached as <u>Exhibit A</u>.

37. The Judgment remains unsatisfied.

38. In May 2009, attorneys for Mr. Potts sent a letter to the ARDC to report Malevitis' conduct.

39. On August 18, 2010, the Administrator of the ARDC filed a complaint with the ARDC against Malevitis (the "*ARDC Complaint*"), which, according to a Report and Recommendation issued by the Hearing Board on April 12, 2012 (attached hereto as <u>Exhibit B</u>), charged Malevitis with misconduct in connection with two matters.

40. Count II of the ARDC Complaint charged Malevitis with "failing to deliver funds to a third person, making false statements to a tribunal, engaging in dishonesty, fraud, deceit or

misrepresentation, and conduct prejudicial to the administration of justice in the Gary Potts matter."  Exhibit B at 1-2.

41. In or around March 2011, after the ARDC Complaint was filed and before the Report and Recommendation was issued, Malevitis finally sent Mr. Potts a check for $882.50 for Mr. Hauser's expenses in the Lake County Action.  Thereafter, Mr. Potts delivered the check to Mr. Hauser.

42. The Hearing Board, in the Report and Recommendation, concluded that Malevitis "engaged in a deliberate and dishonest course of conduct designed to allow him to keep the entire fee in the [Mr.] Potts case and avoid paying Mr. Hauser for his work."  Exhibit B at 42.

43. The Hearing Board found that Malevitis' "very serious" misconduct "directly led to the protracted litigation subsequently instituted by Mr. Hauser against Mr. Potts."  Exhibit B at 46-47.

44. The Hearing Board concluded that the ARDC Administrator proved by "clear and convincing evidence [that Malevitis] violated Rule 3.3(a)(1)" by "making certain statements of material fact to a tribunal, which he knew were false."  Exhibit B at 42.  The Hearing Board found that Malevitis "made a statement of material fact he knew was false in his motion to reduce the lien, when he represented to the court Mr. Hauser's representation of Mr. Potts had been 'brief.'"  Exhibit B at 42.

45. The Hearing Board also concluded that the ARDC Administrator proved by "clear and convincing evidence [that Malevitis] violated . . . Rule 8.4(a)(4)" by "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation . . ."  Exhibit B at 42.  In addition to "other factors . . . that point to dishonesty rather than innocent mistake," the Hearing Board found that Malevitis "misrepresented in the certificate of service he had served a copy of his motion on Mr.

7

Hauser by mailing it to [Mr. Hauser's former] firm." <u>Exhibit B</u> at 43.  The Hearing Board also found that Malevitis "made various false and misleading statements during the subsequent fee litigation when he repeatedly asserted he had paid the costs reflected on the settlement statement." <u>Exhibit B</u> at 44.

      46.      The Hearing Board found that Malevitis "clearly violated [Rule 1.15(b)] by failing to promptly tender the $882.50 in costs from the settlement proceeds to Mr. Hauser or his former firm" and that Malevitis also "violated this Rule by failing to pay Mr. Hauser any portion of the[] [settlement] funds for [Mr. Hauser's] work in the case." <u>Exhibit B</u> at 45.

      47.      The Hearing Board found that Malevitis "engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(a)(5)" by, among other things, "obtain[ing] a court order in the [Mr.] Potts matter based on a false and misleading statement and without providing proper notice to Mr. Hauser." <u>Exhibit B</u> at 46.

      48.      Due to this "very serious" misconduct, the Report and Recommendation concluded that Malevitis should be suspended from practicing law for a period of one year, and that the suspension should continue until Malevitis made restitution in connection with Count I and "until Mr. Potts' judgment against [Malevitis] has been satisfied, whether through settlement or payment of the judgment in full." <u>Exhibit B</u> at 47, 53.

      49.      On May 22, 2013, the Supreme Court of Illinois ordered that Malevitis' suspension would be effective June 12, 2013 and that Malevitis would be "suspended from the practice of law for one (1) year and until he . . . provides the Administrator with satisfactory proof that the judgment entered against him in litigation with Gary Potts and Robert Hauser has been satisfied, as recommended by the Review Board."  A true and correct copy of this announcement is attached hereto as <u>Exhibit C</u>.

8

## COUNT I

**Determination of Dischargeability Under Section 523(a)(2) of the Bankruptcy Code**

50. Mr. Potts repeats and realleges the allegations of paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. The debt caused by Malevitis' actions, as described herein, is attributable to money and property obtained by Malevitis under false pretenses, false representations, and/or actual fraud.

52. All resulting debts owed to Mr. Potts are, therefore, non-dischargeable under section 523(a)(2) of the Bankruptcy Code.

WHEREFORE, Mr. Potts respectfully request that the Court determine that Malevitis' debt to Mr. Potts is non-dischargeable under section 523(a)(2) of the Bankruptcy Code, and grant such other relief as is just and proper.

## COUNT II

**Determination of Dischargeability Under Section 523(a)(4) of the Bankruptcy Code**

53. Mr. Potts repeats and realleges the allegations of paragraphs 1 through 49 of this Complaint as though fully set forth herein.

54. The debt cause by Malevitis' actions, as described herein, is attributable to fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny.

55. All resulting debts owed to Mr. Potts are, therefore, non-dischargeable under section 523(a)(4) of the Bankruptcy Code.

WHEREFORE, Mr. Potts respectfully request that the Court determine that Malevitis' debt to Mr. Potts is non-dischargeable under section 523(a)(4) of the Bankruptcy Code, and grant such other relief as is just and proper.

Dated:  October 17, 2013

Respectfully submitted,

**GARY POTTS**

 /s/  Matthew D. Anderson
 One of his Attorneys

Sven T. Nylen (No. 6278148)
Matthew D. Anderson (No. 6308488)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000